UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                                              :

UNITED STATES OF AMERICA

                                              :

          - v. -                                   S3 13 Cr. 272 (PGG)

                                              :

ROBERT MEDINA,
      a/k/a "Pops,"                                 :

             Defendant.                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S MOTIONS IN LIMINE

                                   PREET BHARARA
                                   United States Attorney
                                   Southern District of New York
                                   One St. Andrew's Plaza
                                   New York, New York 10007

JENNIFER E. BURNS
CHRISTOPHER J. DIMASE
Assistant United States Attorneys
     -Of Counsel-

**TABLE OF CONTENTS**

BACKGROUND ...................................................................................................................... 2

    A. Offense Conduct ....................................................................................................2

    B. Medina's Statements of July 28, 2012 ...........................................................3

    C. Separate Prosecution of Estrada in Dryden, New York .................................4

    D. Federal Charges ....................................................................................................5

    E. The S3 Superseding Indictment ........................................................................6

ARGUMENT............................................................................................................................ 7

    A. Statements Against Penal Interest........................................................................7

          (1) Applicable Law ...........................................................................................7
          (2) Discussion ................................................................................................. 8
    B. Medina's Statements of July 28, 2012 ...........................................................10

          (1) Applicable Law ........................................................................................ 10
          (2) Discussion ............................................................................................... 11
    C. Preclusion of Certain Cross-Examination of Law Enforcement Witness....................14

          (1) Applicable Law ........................................................................................ 14
          a. Rule 608: Impeachment of Character For Truthfulness............................. 15
          b. Rule 611: The Trial Court's Discretion In Controlling Cross-Examination.............. 16
          (2) Discussion ................................................................................................ 17
    D. Other Crimes Evidence ......................................................................................18

          (1) Background ............................................................................................... 18
          (2) Applicable Law ........................................................................................ 19
          (3) Discussion ................................................................................................20
          a. Evidence Of Medina's Additional Narcotics Trafficking Is Admissible Under Federal Rule Of Evidence 404(b) ........................................................................................20
          b. The Probative Value Of The Other Crimes Evidence Far Outweighs Its Prejudicial Impact    24
    E. Protective Order for 3500 Materials ..........................................................................25

    F. *Pinkerton* and Aiding and Abetting Liability .............................................................25

          (1) Applicable Law ........................................................................................ 25
          (2) Instructions Regarding Aiding and Abetting Liability ........................................ 26
          (3) Instructions Regarding *Pinkerton* Liability ................................................. 26
CONCLUSION ...................................................................................................................... 27

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
UNITED STATES OF AMERICA
                                                          :
      - v. -                                                          S3 13 Cr. 272 (PGG)
                                                          :
ROBERT MEDINA,
      a/k/a "Pops,"                                          :

                Defendant.                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PRELIMINARY STATEMENT

The Government hereby makes the following motions *in limine* with respect to the trial of

defendant Robert Medina, a/k/a "Pops," (the "defendant"), which is scheduled to begin on July 7,

2014.  Specifically, the Government seeks:

(1)      An order permitting the Government to elicit evidence of certain statements made by Medina's co-defendant, Ruben Estrada, to an inmate who was housed with Estrada in Tompkins County Jail, Tompkins County, New York;

(2)      An order permitting the Government to offer a redacted version of Medina's post-*Miranda* statement following his arrest on July 28, 2012, and similarly limiting any cross-examination of law enforcement witnesses in relation to that statement;

(3)      An order precluding the defendant from eliciting testimony or evidence relating to certain issues or instances of conduct by one of the Government's anticipated law enforcement witnesses;

(4)      An order permitting the Government to offer certain evidence pursuant to Federal Rule of Evidence 404(b); and,

(5)      A protective order, on the consent of both parties, for all 3500 materials provided to the defendant in advance of trial.

In addition, the Government specifies the charges for which it seeks jury instructions

regarding aiding and abetting and *Pinkerton* liability, as well as the legal bases for providing

those instructions.

1

## BACKGROUND

**A.      Offense Conduct**

At trial, the Government anticipates proving the following, in sum and substance and in part:

In or about 2012, Robert Medina, a/k/a "Pops," and Ruben Estrada, a/k/a "Mafia," together ran a retail crack cocaine and marijuana distribution operation on East 228th Street in the Bronx, New York, along with other locations in the Bronx.  Medina and Estrada employed several subordinates who conducted some of the hand-to-hand drug transactions on the block. They also utilized a basement apartment on the block to store narcotics.  Medina and Estrada possessed, brandished, and discharged guns in connection with their street narcotics operation. They made clear that outsiders were not permitted to sell drugs on their block, and threatened and used violence against those who attempted to do so.

In or about mid-2012, Medina became involved in a violent feud with two drug dealers who distributed narcotics in the vicinity of East 216th Street in the Bronx, namely, Gerod Jackson, a/k/a "Push," and Gary Clark.  The dispute began when Jackson failed to pay Medina for crack cocaine that Medina had supplied to Jackson on consignment.  The dispute escalated as Medina attempted to collect the debt from Jackson at gun point.  In response, on June 12, 2012, Jackson located Medina outside of Scotty's Pump-Up Tavern on White Plains Road ("Scotty's Tavern"), and shot Medina in the leg, wounding him.  Clark was present at the time of the shooting, and subsequently picked up Jackson and drove him away.

Approximately one month later, in the early morning hours of July 28, 2012, Medina and Estrada were present outside of Scotty's Tavern, when Medina spotted Clark's vehicle.  Estrada handed Medina a gun, and Medina fired numerous shots at Clark's car, striking the car but not

2

Clark.  However, Medina did hit an innocent bystander – who was walking out of a nearby restaurant – in the arm with one of those shots.

Several hours later, Clark and Jackson, both armed with guns, travelled in Clark's car to East 228th Street to retaliate.  Medina and Estrada became aware of their intentions, and Estrada fetched a shotgun from a hiding place on the block, and hid in an alleyway.  John Jones was also present on East 228th Street at the time, and had a gun with him.  After Clark and Jackson walked onto East 228th Street, a gunfight ensured, during which both Estrada and Medina fired at Clark and Jackson.  Medina took the gun from Jones and fired several shots, missing both Clark and Jackson.  Estrada struck Clark in the chest with a shotgun shell, killing him.  Jackson then fled the scene.

## B.    Medina's Statements of July 28, 2012

As the Court is well aware from presiding over a previous evidentiary hearing in this case, the defendant made several statements to law enforcement, both before and after his arrest, on July 28, 2012.  Consistent with the Court's Memorandum and Order of May 7, 2014 (the "May 7 Order"), ruling on the defendant's suppression motions, the Government intends to introduce statements made by Medina to NYPD detectives in the stairwell of 721 East 228th Street, and subsequent statements made by Medina to NYPD detectives at the 47th Precinct after waiving his *Miranda* rights.[1]  Much of the substance of Medina's oral post-*Miranda* statement at the 47th Precinct was memorialized in a complaint follow up informational report, commonly known as a "DD5" form, which is attached hereto as Exhibit A.[2]  During his post-*Miranda*

---

[1]  As noted in footnote 14 of the May 7 Order, the Government "will not seek to introduce any of Medina's statements to Detective Craig Crisfield during their one-on-one encounter at the 47th Precinct."  May 7, 2014 Order at 30 n.14.
[2]  In addition to the statements contained in Exhibit A, Detective Steven Smith testified at the suppression hearing that "the dispute between him and his assailants arose from a debt that they

statement to detectives, in addition to relaying his version of the facts of his dispute with Gerod

Jackson and Gary Clark, Medina proffered several self-serving statements concerning his

claimed fearful state of mind at the time of the charged firearms offenses.  *See* Exhibit A.

**C.      Separate Prosecution of Estrada in Dryden, New York**

On August 27, 2012, approximately one month after the murder of Gary Clark, police

officers with the Dryden Police Department in Dryden, New York, arrested Estrada and others in

connection with their possession of two assault rifles recovered from a vehicle.  The following

day, on August 28, 2012, in Dryden Town Court, Estrada was arraigned on a criminal complaint

charging him with, *inter alia*, Criminal Possession of a Weapon in the Third Degree, in violation

of New York State Penal Law Section 265.02.  Estrada was held in custody.

Following his arrest, Estrada was incarcerated in Tompkins County Jail where he was

housed with another inmate (the "Inmate") for approximately one month.  During the period that

Estrada was housed with the Inmate, Estrada made the following admissions to the Inmate, in

sum and substance and in part:

(a)      Before he was arrested, Estrada and his business partner were selling drugs

together in their neighborhood in the Bronx, New York, and were making

substantial profits from their drug trafficking operation.

(b)      On one occasion, after observing a man selling drugs on their block without

permission, Estrada hit the man with a gun and the gun discharged.

(c)      On another occasion, Estrada and others went out to a local bar, and saw some

individuals that they had problems with in the neighborhood over drugs.

Estrada's partner fired a gun at those individuals.

---

owed Medina related to the sale of cocaine or crack cocaine."  May 7, 2014 Order at 15 (citing
Hearing Tr. 389, 412-13).

(d)     Later the same night, at around 5:00 or 6:00 a.m., the individuals whom Estrada's partner fired upon at the club came to the block where Estrada and his partner were located.  A shootout ensued.  Estrada ran into an alley, grabbed a shotgun, and shot and killed one of the individuals.  Estrada's partner was present at the time of the shootout, and also fired a gun at the individuals who came to the block.  Immediately after the shootout, Estrada ran into a nearby apartment, from which he observed a body lying on the street.

(e)     Following the shootout, Estrada and his partner attempted to obtain surveillance video from the superintendent of a building on the block, in order to cover up the murder.  They were not successful in obtaining that video.

(f)     After the murder, Estrada provided the shotgun that he used in the shooting to an uncle who worked at a mechanics shop.  The uncle melted the gun so that it could not be recovered by the authorities.

## D.    Federal Charges

On March 12, 2013, the Government filed complaint number 13 Mag. 670, charging Medina in two counts, a violation of Title 21, United States Code, Section 846, relating to his participation in a conspiracy to distribute 280 grams or more of crack cocaine, and a violation of Title 18, United States Code, Section 924(c), relating to the shooting of Clark's car and an innocent bystander on July 28, 2012.  The following day, on March 13, 2013, the Government writted Medina from state custody to appear on the federal charges.  On April 12, 2013, a Grand Jury sitting in this District returned Indictment 13 Cr. 272, charging Medina in the same two counts with which he was charged in the earlier federal complaint.  Approximately one month later, on May 15, 2013, the Government filed complaint number 13 Mag. 1280, charging Estrada

for his participation in the murder of Gary Clark on July 28, 2012; Estrada was arrested the same day.

### E.    The S3 Superseding Indictment

On or about April 22, 2014, the superseding indictment captioned as *United States v. Robert Medina, et al.*, S3 13 Cr. 272 (PGG) (the "S3 Indictment") was unsealed in this District. The S3 Indictment charges Medina, Estrada, and John Jones, a/k/a "Doe," a/k/a "Doughboy," in four counts. Count One charges all three defendants in a 2012 conspiracy to distribute cocaine base and marijuana, in violation of Title 21, United States Code, Section 846. Count One alleges that Medina and Estrada conspired to distribute 280 grams or more of cocaine base and a quantity of marijuana, and that Jones conspired to distribute 280 grams or more of cocaine base. Count Two charges Medina and Estrada with the possession and use of firearms, which were brandished and discharged, throughout the 2012 drug conspiracy, to exclude the July 28, 2102 murder of Gary Clark. Count Three charges Jones with the possession and use of a firearm, which was discharged, during the course of the July 28, 2012 murder of Gary Clark. Count Four charges Medina and Estrada with the "use, carrying, and possession of a firearm, and . . . caus[ing] the death of a person through the use of a firearm," namely, the murder of Gary Clark on or about July 28, 2012, during and in relation to the 2012 drug conspiracy.

By Order dated April 23, 2014, the Court granted Medina's motion for severance from his co-defendants on the charges contained in the S3 Indictment, and scheduled a trial of Medina to begin on July 7, 2014.

6

## ARGUMENT

### A.    Statements Against Penal Interest

The Government seeks an order permitting it to elicit certain statements by Ruben Estrada regarding criminal action jointly undertaken by Medina and Estrada.  Pursuant to the hearsay exception regarding statements against penal interest, the statements are admissible.

### (1)    Applicable Law

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c). The hearsay rule, however, has important exceptions.  One such exception provides that an out-of-court statement by an unavailable declarant is admissible, if the statement was against the declarant's penal interest and "supported by corroborating circumstances that clearly indicate its trustworthiness."  Fed. R. Evid. 804(b)(3).  A statement is sufficiently against the declarant's penal interest if:

> a reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to . . . expose the declarant to civil or criminal liability.

Fed. R. Evid. 804(b)(3)(A).

Although "non-self inculpatory statements . . . made within a broader narrative that is generally self-inculpatory" are not admissible as statements against penal interest, *Williamson v. United States*, 512 U.S. 594, 600-01 (1994), a statement describing inculpatory acts committed by the declarant and a defendant are admissible in full as statements against the declarant's self-interest, especially where the context of the statement demonstrates that the declarant was not attempting to "minimize his own culpability, shift blame onto [the defendant], or curry favor

7

with authorities." *United States v. Williams*, 506 F.3d 151, 155 (2d Cir. 2007); *accord United States v. Wexler*, 522 F.3d 194, 203 (2d Cir. 2008) (admitting statements that implicated both declarant and defendant); *United States v. Saget*, 377 F.3d 223 (2d Cir. 2004) (admitting taped conversations implicating both the declarant and the defendant in joint criminal activity). Finally, because statements to associates about crimes in which the declarant participated are not testimonial, the admission of such statements does not violate the Confrontation Clause. *Williams*, 506 F.3d at 157.

### (2)   Discussion

Ruben Estrada's statements to the Inmate after Gary Clark's murder fit within the Rule 804(b)(3) exception for statements against penal interest.  As a preliminary matter, Estrada is "unavailable" within the meaning of Rule 804 because his attorney has communicated to the Government that he would invoke his Fifth Amendment privilege against self-incrimination if he were called to testify at Medina's trial.  *See United States* v. *Savoca*, 335 F. Supp. 2d 385, 390 (S.D.N.Y. 2004).

Estrada's statements to the Inmate undoubtedly exposed him to criminal liability in connection with the murder of Gary Clark, among other offenses.  Estrada made admissions to the Inmate involving a series of criminal offenses involving both himself and Medina.[3]  While they were incarcerated together at Tompkins County Jail, Estrada told the Inmate that he and his "partner" were selling drugs together in the Bronx, that his partner shot at individuals with whom they were engaged in a drug dispute, and that later the same night those individuals came to their block, whereupon both Estrada and his partner fired at them, killing one of the individuals.

---

[3]  Although the Inmate will not reference Estrada's "partner" by name or identify Medina in Court, in combination with the other evidence the Government intends to introduce at the trial, the Inmate's statements are sufficiently specific to identify the "partner" as Medina, and thereby overcome any objection based on relevance under Federal Rule of Evidence 401.

Estrada's statements to the Inmate clearly inculpate him because they describe his conspiracy with Medina in connection with a drug business and the related murder of Gary Clark. *See United States* v. *Persico*, 645 F.3d 85, 102 (2d Cir. 2011) ("A statement will satisfy Rule 804(b)(3)'s requirement that it 'tended' to subject the declarant to criminal liability if it would be probative in a trial against the declarant," (internal quotation marks omitted)); *see also Williams*, 506 F.3d at 155 (finding statements against penal interest of the declarant admissible against a trial defendant because the statements "described acts that [the declarant] and [the witness] committed jointly").

Moreover, Estrada's statements to the Inmate indicating that one of the individuals was killed because of a pre-existing drug-related dispute was self-inculpatory because those statements identified a motive for the murder of Clark. Estrada's statements to the Inmate regarding Medina's shooting earlier the same night were likewise self-incriminating, in that they demonstrated the joint criminal undertaking of Medina and Estrada, and their mutual involvement in the drug dispute with Clark and Jackson. *See United States* v. *Saget*, 377 F.3d 223, 231 (2d Cir. 2004) (affirming district court's reasoning that statements by a non-defendant declarant regarding illegal acts taken by the defendant, alone, fit within Rule 804(b)(3): the statements were "self-inculpatory in context" because they "reflected [the declarant's] attempt to give the [witness] examples of how [the declarant] and [the defendant] operated and why their scheme worked").

Importantly, Estrada's statements do not reflect any effort on his part to minimize his culpability, shift blame for his conduct to Medina, or "curry favor with the authorities." *Williams*, 506 F.3d at 155. Furthermore, his statements to the Inmate are "supported by corroborating circumstances that clearly indicate [their] trustworthiness." Fed. R. Evid.

9

804(b)(3)(B).  Surveillance video, witness testimony, and the post-arrest statement of Medina

himself, as well as other trial evidence, corroborate the information that Estrada provided to the

Inmate.  Accordingly, Estrada's statements to the Inmate are admissible against Medina as

statements against Estrada's penal interest, pursuant to Federal Rule of Evidence 804(b)(3).

**B.      Medina's Statements of July 28, 2012**

       **(1)      Applicable Law**

Federal Rule of Evidence 801(c) provides that "'[h]earsay' means a statement that: (1)

the declarant does not make while testifying at the current trial or hearing; and (2) a party offers

in evidence to prove the truth of the matter asserted in the statement."  Pursuant to Rule

801(d)(2), however, a statement is not hearsay if "[t]he statement is offered against an opposing

party and (A) was made by the party in an individual or representative capacity." Fed. R. Evid.

801(d)(2) (emphasis added).  Thus, while the Government may freely offer at trial a defendant's

out-of-court statement, the defendant cannot offer the same statement unless it falls within an

exception to the prohibition against hearsay.

"State of mind" evidence is also addressed in Federal Rule of Evidence. 803, which lists

exceptions to the hearsay rule.  Rule 803(3) states that a party may introduce "[a] statement of

the declarant's then-existing state of mind. . . ." Fed. R. Evid.  803(3) (emphasis added).

However, a defendant's statement – when offered by the defendant – about "what he or someone

else has done in the past . . . would be properly excluded as inadmissible hearsay not within the

terms of Rule 803(3)."  *United States v. Lawal*, 736 F.2d 5, 8 (2d Cir. 1984).

Self-serving, exculpatory statements are hearsay, and are therefore generally not

admissible, unless their exclusion would unfairly distort the meaning of the declarant's non-

hearsay statements that are in evidence.  Under "the rule of completeness embodied by Federal

10

Rule of Evidence 106 . . . even though a statement may be hearsay, an 'omitted portion of [the] statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion.'" *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007) (quoting *United States v. Castro*, 813 F.2d 571, 575-76 (2d Cir.1987)). "The completeness doctrine does not, however, require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *Johnson*, 507 F.3d at 796 (quoting *United States v. Jackson*, 180 F.3d 55, 73 (2d Cir. 1999), *vacated on other grounds*, 196 F.3d 383 (2d Cir. 1999)). "[T]he rule of completeness is violated 'only where admission of the statement in redacted form distorts its meaning or excludes information substantially exculpatory of the declarant.'" *United States v. Yousef*, 327 F.3d 56, 154 (2d Cir. 2003) (quoting *United States v. Benitez*, 920 F.2d 1080, 1086-87 (2d Cir. 1990)). A court may "exclude any portion of a defendant's 'own self-serving statement, which, as offered by him, are inadmissible hearsay.'" *United States v. Mahaffy*, No. 05-CR-613 (S-3)(ILG), 2007 WL 1094153, at *2 (Apr. 10, 2007 E.D.N.Y.) (citing *Jackson*, 180 F.3d at 73); *see also Phoenix Assocs. III v. Stone*, 60 F.3d 95, 103 (2d Cir. 1995) (explaining that "Rule 106 does not compel admission of otherwise inadmissible hearsay evidence").

### (2)    Discussion

The Government intends to offer a redacted version of Medina's July 28, 2012 post-*Miranda* statement, on the ground that certain portions of the statement are inadmissible under Rule 801(d)(2). In particular, the Government seeks to exclude the following self-serving

allegations, describing Medina's past state of mind—as opposed to his version of the facts

regarding his dispute with Jackson and Clarke:[4]

- Following the incident on June 12, 2012, Medina "liv[ed] in constant fear for his safety."
- Upon observing a red Cadillac on July 27, 2012, Medina "fearing for his safety . . . ran."
- Medina was "tired of running from theses guy[s]," and he had "to protect [himself]" because "they already shot [him]."

*See* Exhibit A.[5]  These statements are self-serving, "are neither explanatory of nor relevant" to

the other passages in Medina's post-*Miranda* statement, and do not constitute "state of mind"

evidence under Rule 803(3), and are therefore properly precluded as inadmissible hearsay.

As a threshold matter, the above-described statements are classic hearsay, to the extent

that they are offered by the defendant and are therefore not classified as party admissions under

Rule 801(d)(2).  Medina's claims that he was "living in constant fear," was "tired of running,"

and had "to protect himself" are "purely self-serving hearsay statements that are neither

necessary to rebut any inferences offered by the Government, nor are they necessary to avoid

juror confusion as to why" the defendant committed the charged offenses.  *See Mahaffy*, 2007

WL 1094153, at *3.  Any argument that such false exculpatory statements should be admitted to

show Medina's state of mind at the time of the charged offenses is nothing more than an

attempted end run around the rule prohibiting Medina from introducing his own self-serving

statements without testifying himself.

This is particularly true in light of the fact that the Government does not seek to exclude

Medina's allegations that "the perpetrators chased him on the street and fired shots at him" on

---

[4] By eliciting Medina's version of the facts as set forth in Exhibit A, the Government is not crediting them as truthful, but only acknowledging them as admissible.

[5] The portions of Medina's statement which the Government seeks to exclude are highlighted in Exhibit A.

several occasions, that he observed a red Cadillac drove by on July 27, 2012, and that prior to shooting at the red Cadillac on July 28, 2012, he "observed the driver begin to pull a firearm from his waistband." These factual statements are more than sufficient – without need for the admission of Medina's claims regarding his own mental state – to properly place the remainder of the defendant's statement "in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion.'" *Johnson*, 507 F.3d at 796. Although the entirety of Medina's post-*Miranda* statement will not be introduced, the "redacted" version that the Government intends to introduce does not unfairly distort the original statement and does not exclude substantially exculpatory information. *United States v. Mussaleen*, 35 F. 3d 692, 696 (2d Cir. 1994) (citing *United States v. Alvarado*, 882 F. 2d 645, 651 (2d Cir. 1989)). Accordingly, the above-described statements are properly excluded.

Moreover, those statements would be inadmissible if offered by the defendant. As the Honorable Jack B. Weinstein, United States District Judge, Eastern District of New York, has stated, to be admissible pursuant to Fed. R. Evid. 803(3), the statements "must be contemporaneous with the mental state to be proven"—thus, to be admissible here, the statements offered must relate to Medina's state of mind at the time of his post-*Miranda* statement, not at some point in the past. 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 803.5[2][a] (2nd Ed. 2012). Medina's claims that he was fearful and concerned about his safety—even assuming they are accurate—go to his alleged "state of mind" at the time he engaged in the charged offenses, not his "then-existing" state of mind at the time the statements were made. Thus, the statements could only be offered as "a past memory or belief offered to prove the fact remembered or believed," and are therefore inadmissible. *Taubman*, 297 F.3d at 165.

Rule 803(3) further demands that there be no "suspicious circumstances suggesting a motive for the declarant to fabricate or misrepresent his or her thoughts." 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 803.5[2][a] (2nd Ed. 2012). Here, Medina made the above statement when under police questioning in connection with serious and violent offenses. These are exactly the circumstances that would motivate a defendant to fabricate a story to justify his own conduct. Because the statements at issue here do not meet either of the first two prongs of Rule 803(3), they cannot be admissible to show Medina's then-existing state of mind.

Medina's false exculpatory statements, if elicited, would be offered for the truth of the matter asserted, and in the absence of any ground for admissibility under Rule 803(3), clearly constitute hearsay. Admissions may only be introduced by a party opponent—here, the Government. Accordingly, the Government also seeks a ruling, *in limine*, regarding the proper scope of cross examination of its law enforcement witnesses.

### C.   Preclusion of Certain Cross-Examination of Law Enforcement Witness

The Government moves *in limine* to preclude the cross-examination of one of its law enforcement witnesses regarding a prior criminal case in which that witness testified. That case is unrelated to the instant prosecution and does not bear on the witness's credibility. Cross-examination would therefore serve no useful purpose and would instead present an unnecessary risk of inflaming the jury.

#### (1)   Applicable Law

The Confrontation Clause guarantees the right of a defendant in a criminal case to be confronted with the witnesses against him. *E.g.*, *Delaware* v. *Van Arsdall*, 475 U.S. 673, 678

(1986).  The Clause does not, however, deprive the trial judge of all discretion in setting limits on cross-examination:

> On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

*Id.* at 679; *see also United States* v. *Shaw*, No. 06 Cr. 41 (CM), 2008 WL 4899541, at *8 (S.D.N.Y. Nov. 13, 2008) ("It is well settled that the scope and extent of cross-examination lies within the sound discretion of the trial judge." (internal quotation marks omitted)).  In keeping with these constitutional principles, the Federal Rules of Evidence provide guidelines regarding the proper scope and subject matters of cross-examination.  *See United States* v. *Maldonado-Rivera*, 922 F.2d 934, 955-56 (2d Cir. 1990).

### a.      Rule 608: Impeachment of Character For Truthfulness

Rule 608 imposes limitations on cross-examination regarding a witness's character for truthfulness.  First, Rule 608(b) "prohibits a party from presenting 'extrinsic evidence' of '[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility,' unless that conduct was the subject of a criminal conviction."  *United States* v. *Crowley*, 318 F.3d 401, 417 (2d Cir. 2003); *United States* v. *Schatzle*, 901 F.2d 252, 256 (2d Cir. 1990).

Second, apart from extrinsic evidence, Rule 608(b) limits cross-examination regarding "specific instances of a witness's conduct" to situations where the conduct of the witness was "probative of the [witness's] character for truthfulness or untruthfulness."  Fed. R. Evid. 608(b).  Rule 608(b) "'does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness.'"  *United States* v. *Schlussel*, No. 08 Cr. 694 (JFK),

15

2009 WL 536066, at *3 (S.D.N.Y. Feb. 27, 2009) (quoting *United States* v. *Nelson*, 365 F. Supp. 2d 381, 386 (S.D.N.Y. 2005)).  In exercising its discretion regarding limitations on cross-examination under Rule 608(b), the Court may consider "(1) whether the prior judicial finding addressed the witness's veracity in that specific case or generally; and (2) whether the two sets of testimony involved similar subject matter." *United States v. Cedeño*, 644 F.3d 79, 82 (2d Cir. 2011) (citing *United States* v. *Cruz*, 894 F.2d 41, 43 (2d Cir. 1990)).  "Further, under Rule 403, the district court may exclude even relevant evidence if it finds that the probative value [of the testimony] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Crowley*, 318 F.3d at 417 (internal quotation marks omitted).

> **b.      Rule 611: The Trial Court's Discretion In Controlling Cross-Examination**

In addition to the broad discretion afforded to trial courts to limit cross-examination, *see United States* v. *Rosa*, 11 F.3d 315, 335 (2d Cir. 1993), Rule 611 makes clear that "[c]ross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility."  Fed. R. Evid. 611.  Rule 611(a) also provides that the court should "protect witnesses from harassment or undue embarrassment."  *Id.*  Any cross-examination must also satisfy the requirements of Rule 403, which imposes similar restrictions on presenting unfairly prejudicial, repetitive, or confusing evidence and questioning.  *See, e.g.*, *United States* v. *Gotti*, No. 02 Cr. 743 (RCC), 2005 WL 1214321, at *3 (S.D.N.Y. May 19, 2005).

**(2)**     **Discussion**

The Government moves to preclude cross-examination of Detective Craig Crisfield regarding the decision of a state supreme court justice in the case of *People* v. *Keogh*, 30 Misc.3d 1205 (N.Y. Sup. 2010), in which the court observed, in *dicta*, that Detective Crisfield tried to interview a defendant without reading him his *Miranda* rights.

First, cross-examination regarding the *Keogh* ruling is inappropriate because there is no connection between that case and the offenses that the Government intends to prove at trial. *See Cruz*, 894 F.2d at 44 ("In the absence of any connection between the subject of [the previous testimony] and [the witness's] testimony in the case at bar, it cannot be said that [the trial court's] finding as to the former is relevant in any way to a resolution of the issues in [this] case."). Detective Crisfield's actions in 2008, at issue in the *Keogh* case, simply do not shed light on what happened in the interview room with Medina four years later on July 28, 2012.

Second, and more importantly, cross-examination regarding the *Keogh* case should be precluded because it does not relate to Detective Crisfield's credibility. *See Cedeño*, 644 F.3d at 82. Indeed, the New York State Supreme Court justice explicitly credited Detective Crisfield's testimony. *Keogh*, 30 Misc.3d 1205, at *1 ("The People called . . . Detective Craig Crisfield . . . whose testimony the court credits."). While the court in that case suppressed evidence because another officer erred in concluding that there was probable cause for the arrest, it offered no criticism of the credible testimony provided by Detective Crisfield. *Id.* Accordingly, cross-examination of Detective Crisfield regarding the *Keogh* case would not be relevant to the only issue on which it could be offered: his character for truthfulness.[6]

---

[6] Furthermore, although the Second Circuit has not addressed these issues, the court's ruling in *Keogh* and any findings related thereto would be inadmissible hearsay as well as extrinsic evidence barred by Rule 608(b). *Cf. White*, 692 F.3d at 245 ("We therefore have no occasion to

Because the *Keogh* Court's decision is not relevant to the instant case and does not bear on Detective Crisfield's credibility, any probative value that it has is outweighed substantially by the risk of unfair prejudice, confusion, embarrassment to the witnesses, and delay during the trial. *See* Fed. R. Evid. 402. Therefore, the Court should preclude any cross-examination of Detective Crisfield regarding the New York State Supreme Court's ruling in *Keogh*.

## D.   Other Crimes Evidence

### (1)   Background

The Government seeks to introduce evidence of the defendant's prior crimes and other bad acts during the trial of this matter. In addition to demonstrating the defendant's knowledge, intent, motive, opportunity, identity, and lack of mistake or accident with respect to the charges in the Indictment and thus being admissible pursuant to Rule 404(b) of the Federal Rules of Evidence ("Rule 404(b)"), much of the evidence constitutes *Giglio* material for the Government's witnesses and thus will be elicited during their testimony.[7]

First, the Government seeks to introduce the following evidence, which relates primarily to the narcotics conspiracy charged in Count One of the Indictment:[8]

- In approximately 2006-2007, Medina sold marijuana in the vicinity of East 233rd Street and East 238th Street in the Bronx. Medina also had others selling for him at that time.
- In approximately the 1990s, Medina sold crack cocaine in the vicinity of East 213th Street and Bronxwood Avenue in the Bronx.

This evidence will be elicited from a Government witness ("Witness-1"). Witness-1 will describe this additional narcotics trafficking based on Witness-1's personal observations of and

---

decide hearsay questions, and nothing in this opinion forecloses the district court from considering hearsay objections to this evidence (or any other evidence) at re-trial.").

[7] To the extent that the Government develops evidence – prior to and during the course of trial – that would establish additional uncharged crimes that the Government will seek to prove, we will provide prompt notice to the Court and defense counsel.

[8] By letter dated June 6, 2014, the Government advised the defendant of its intention to seek to introduce this evidence.

18

interactions with Medina.  The Government anticipates that Witness-1 will testify pursuant to a cooperation agreement.

Second, the Government also seeks to introduce evidence that Medina was a member of the Crips gang ("the Crips").  Medina's membership in the Crips will be elicited from more than one Government witness.  Additionally, Medina discussed his Crips membership in recorded inmate calls while he was incarcerated in 2012.  For example, in a recorded call on or about August 8, 2012, Medina stated that the unit he was assigned to was "Cripped out.  Mad cripped out."  Medina further stated that inmates found out that he "was Crip" and that he was the "only one Crip there."  Similarly in a recorded inmate call on or about August 9, 2012, Medina stated that he expected to be assigned to the "Crip house" because he told "them [he] was Crip."  In addition, in a recorded call on or about August 18, 2012, Medina stated, "I'm gonna denounce my colors when I get out of her . . .I ain't gonna fly colors no more . . . That means I'm not banging no more . . . I'm gonna be Crip, but I'm gonna be inactive . . . ."

### (2)   Applicable Law

Evidence of "similar acts" is admissible under Rules 404(b) and 403 of the Federal Rules of Evidence if such evidence is relevant to some issue at trial other than the defendant's character, and if the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice.  *See, e.g., Huddleston v. United States*, 485 U.S. 681, 685-86 (1988); *United States* v. *Jaswal*, 47 F.3d 539, 544 (2d Cir. 1995) (per curiam).  It is well settled that "other acts" evidence is admissible under Rule 404(b) so long as the evidence: (1) is advanced for a proper purpose; (2) is relevant to the crimes for which the defendant is on trial; and (3) has probative value that is not substantially outweighed by any unfair prejudicial effect.  *See United States* v. *Paulino*, 445 F.3d 211, 221 (2d Cir. 2006) ("Other-crime evidence is admissible for any other

19

relevant purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that the probative value of this relevant purpose is not substantially outweighed by any unfair prejudice" (internal quotation marks and citations omitted)), *cert. denied*, 549 U.S. 980 (2006); *see also United States* v. *Ortiz*, 857 F.2d 900, 903 (2d Cir. 1988) ("[O]ther acts or crimes are admissible under Rule 404(b) to prove matters other than the defendant's criminal propensity").

The Second Circuit takes an "inclusionary" approach to the admission of other act evidence, under which "evidence of prior crimes, wrongs, or acts 'is admissible for any purpose other than to show a defendant's criminal propensity.'" *United States* v. *Paulino*, 445 F.3d at 221 (quoting *United States* v. *Pitre*, 960 F.2d 1112, 1118-19 (2d Cir. 1992)).    The Second Circuit has routinely approved the admission of prior misconduct evidence with respect to the issues of a defendant's knowledge, intent, and absence of mistake, where those issues are in dispute. *See, e.g., United States* v. *Thomas*, 54 F.3d 73, 81-82 (2d Cir. 1995); *United States* v. *Oshatz*, 912 F.2d 534, 542-43 (2d Cir. 1990).

A District Court's ruling on similar acts evidence may be reversed only for abuse of discretion, and "[t]o find such an abuse [the Court of Appeals] must be persuaded that the trial judge ruled in an arbitrary and irrational fashion." *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996) (citing *Pitre*, 960 F.2d at 1119).

**(3)    Discussion**

**a.    Evidence Of Medina's Additional Narcotics Trafficking Is Admissible Under Federal Rule Of Evidence 404(b)**

Given the above authority, Medina's trafficking in the same narcotics charged here – marijuana and crack cocaine – prior to 2012 is particularly probative of his "opportunity, intent, preparation, plan, knowledge, and identity," and would squarely rebut arguments or evidence of

20

"mistake or accident." Thus, the Government should be allowed to offer evidence of this prior narcotics trafficking to prove, among other things, Medina's knowledge, opportunity, and/or lack of mistake or accident. Further, the proffered evidence should be admitted to complete the story of the charged conspiracy and the relationship between the defendant and Witness-1 – that is, to describe the full extent and scope of the narcotics conspiracy, and to explain the development of the illegal relationship between Medina and Witness-1 and the mutual trust that existed between them. *See, e.g., United States* v. *Williams*, 205 F.3d 23, 33 (2d Cir. 2000); *United States* v. *Pascarella*, 84 F.3d 61, 73 (2d Cir. 1996) (other act evidence admissible "to show the background of a conspiracy or the development of a relationship of trust between the participants."); *Pipola*, 83 F.3d at 565 ("One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case"); *United States v. LaSanta*, 978 F.2d 1300, 1307 (2d Cir. 1992) (evidence of other crimes is admissible "to delineate the background details of a conspiracy – to 'inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed'") (quoting *Pitre*, 960 F.2d at 1119); *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) ("evidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense"); *Rosa*, 11 F.3d at 333-34 (evidence of prior acts of car theft and drug dealing properly admitted to show development of illegal relationship between defendant and co-conspirator and to explain how defendant came to play an important role in the conspiracy).

21

Similarly, the testimony regarding Medina's membership in the Crips speaks to his relationships with certain of the Government's witnesses.  Some of the Government's witnesses will testify to themselves being members of the Crips, and that their membership in the Crips relates to their knowledge of and relationship with Medina.  In that regard, Medina's involvement in the Crips helps explain "how the co-conspirators came to interact with each other, and renders more plausible their joint participation" in the charged conspiracy.  *United States* v. *Lasanta*, 978 F.2d 1300, 1307 (2d Cir. 1992); *see also United States* v. *Romero-Padilla*, 583 F.3d 126, 130 (2d Cir. 2009) (*per curiam*) (although evidence of defendant's previous plans with a co-conspirator to import narcotics into the United States through Mexico and the Dominican Republic "did not concern the charged conspiracy, it was relevant background evidence inasmuch as it corroborated the charge that [the co-conspirator] and [defendant] were partners during the charged conspiracy").  This evidence also helps to explain Medina's relationship of mutual trust with the Government's witnesses.   Medina's Crips membership evidence is being offered only to show the existence of the illegal relationship between Medina and the witnesses, not to show Medina's propensity to commit crimes or some other impermissible purpose.  Indeed, the Government is not seeking to admit bad acts associated with Medina's membership in the Crips, but only the fact of his membership.  *Cf. United States* v. *Barret*, No. 10-cr-809 (KAM), 2011 WL 6704862, at \*12 (E.D.N.Y. Dec. 21, 2011) (admitting evidence of defendants' membership in gang "to help the jury understand the historical development of the illegal relationships and levels of trust among the co-conspirators, and the conspiracy itself" but excluding references to gang murders that took place prior to the charged conspiracy). The Second Circuit has also held repeatedly that corroboration of Government witnesses is an appropriate, non-propensity purpose for admitting other acts evidence.  *See, e.g.*,

22

*United States* v. *Everett*, 825 F.2d 658, 660-61 (2d Cir. 1987) ("Under Rule 404(b) evidence of 'other crimes' has been consistently held admissible to corroborate crucial prosecution testimony.") (citations omitted); *United States* v. *Williams*, 577 F.2d 188, 192 (2d Cir. 1978) (holding that other acts evidence is admissible "for corroboration purposes, provided that the corroboration is direct and the matter corroborated is significant"). Thus, Medina's statements in the recorded inmate calls in which Medina describes himself as being a Crip at the time of the charged conduct in 2012 corroborate the testimony provided by the Government's witnesses.

Further, the Government's witnesses will themselves acknowledge their own gang affiliation; thus, the proffered evidence is also admissible because the witnesses will need to acknowledge their gang affiliation as part of their own criminal conduct. It is incumbent upon the Government pursuant to *United States v. Bagley*, 473 U.S. 667 (1985), and *Giglio v. United States*, 405 U.S. 150 (1972), to apprise the defendant of these acts, and the Government is permitted to elicit the witness's testimony about the uncharged crimes "to avoid the appearance that it [is] concealing impeachment evidence from the jury." *United States v. Coonan*, 938 F.2d at 1561 ("since the witnesses were participants in the events about which they testified, it was appropriate for the prosecution to elicit testimony during direct examination that exposed details damaging to their credibility"); *see United States v. Louis,* 814 F.2d 852, 856 (2d Cir. 1987) (proper for the Government to elicit testimony from accomplice witness regarding his prior conviction). Only if a witness is permitted to testify openly about the circumstances of his own criminal conduct, including his prior interactions with the defendant, can the jury make a well-informed evaluation of the witness's credibility. *See United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990).

**b.      The Probative Value Of The Other Crimes Evidence Far Outweighs Any Prejudicial Impact**

Finally, the probative value of the evidence outlined above is not outweighed by the risk of unfair prejudice.   The additional narcotics trafficking evidence is limited to that known to Witness-1 during the course of Witness-1's relationship with Medina, and involves the same drugs which were the objects of the charged conspiracy. Thus this additional narcotics conduct is not anything more significant than that with which Medina is charged.  As to Medina's membership in the Crips, such evidence is being offered solely to show his relationship with other witnesses and does not connect to any additional criminal conduct.

The testimony and evidence regarding these matters will be brief and not more sensational or inflammatory than the evidence of the charged crimes, in particular that of the murder of Clark. *See Pitre*, 960 F.2d at 1120 (danger of unfair prejudice lessened if "other acts" evidence involves crime of equal or less seriousness than the charged crimes); *Roldan-Zapata*, 916 F.2d at 804 (same).  It cannot fairly be said – in the context of a case in which the defendant is charged with murder – that there is a "substantial risk" that the jury would evaluate the "other crime" evidence on an irrational or emotional basis, rather than for the purpose that it will be used.   The Court can carefully guard against any potential prejudice by instructing the jury about the proper and improper uses of the "other crimes" evidence.  Such an instruction serves as an appropriate "final protection" against possible prejudice.  *See United States v. Levy*, 731 F.2d 997, 1002 (2d Cir. 1984); *United States v. Davis*, 181 F.3d 83 (2d Cir. 1999) (summary order, citing *United States v. Araujo*, 79 F.3d 7, 8 (2d Cir. 1996)).

For the reasons set forth above, the Government should be permitted to elicit evidence of (1) Medina's trafficking in marijuana and crack cocaine prior to the time period charged in the indictment, and (2) Medina's membership in the Crips.

24

**E.      Protective Order for 3500 Materials**

The parties have agreed that: (1) the Government will produce materials pursuant to Title 18, United States Code, Section 3500 (the "3500 Material") to the defendant one week before trial begins; and (2) a protective order containing the following terms may be entered by the Court with respect to the 3500 Material: (a) the defense will return or destroy all 3500 material (including all copies thereof), at the conclusion of the trial or when any appeal has become final; (2) the defense is precluded from disseminating any 3500 material (and any copies) to anyone beyond the defendant, defense counsel, and any paralegal or staff employed by the defense; and (3) the defendant himself is precluded from taking any 3500 material (or any copies), or possessing any 3500 material in any jail facility, either before, during, or after trial; except that the defendant may review 3500 material in the possession of defense counsel when in the presence of defense counsel.  On the consent of both parties, the Government requests that the Court issue a protective order to this effect.

**F.      *Pinkerton* and Aiding and Abetting Liability**

The Government seeks, and anticipates that it will establish an adequate evidentiary basis for, jury instructions regarding aiding and abetting and *Pinkerton* liability with respect to Counts Two and Four of the S3 Indictment.

**(1)      Applicable Law**

Where there is an adequate evidentiary foundation in the trial record, *see United States* v. *Paccione*, 949 F.2d 1183, 1200-01 (2d Cir. 1991), "[a] court may charge the jury under a theory of either aiding and abetting or *Pinkerton* liability, or both, as they are alternative theories of the case," *Melo* v. *United States*, 825 F. Supp. 2d 457, 464 n.3 (S.D.N.Y. 2011) (citing *United States* v. *Masotto*, 73 F.3d 1233, 1242 (2d Cir. 1996)).

**(2)      Instructions Regarding Aiding and Abetting Liability**

Under an aiding and abetting theory, a jury may find a defendant guilty of a crime if the defendant aids and abets, or causes, another person to commit the offense.  *See* 18 U.S.C. § 2. "An aiding and abetting jury instruction is appropriate where the prosecution makes it known that it intends to proceed on a theory of aiding and abetting and the evidence so warrants." *United States* v. *Smith*, 727 F.2d 214, 217 (2d Cir. 1984); *see also United States* v. *Abozoid*, 257 F.3d 191, 199 (2d Cir. 2001) ("[T]he district court mistakenly declined to charge the jury on an aiding and abetting theory . . . although the indictment charged it."); *United States* v. *Mucciante*, 21 F.3d 1228, 1234 (2d Cir. 1994) ("[A]n aiding and abetting charge is arguably implicit in every indictment.").

By citing Title 18, United States Code, Section 2, in the Indictment, the Government provided notice to the defendant that it intends to proceed, in the alternative, on an aiding and abetting theory with respect to Counts Two and Four of the S3 Indictment.  The Government expects that the evidence from its case-in-chief will provide an adequate foundation for an aiding and abetting charge with respect to both of these counts.

**(3)      Instructions Regarding *Pinkerton* Liability**

"[T]he law is clear that a defendant is liable for all acts that are reasonably foreseeable during the course of his criminal conspiracy."  *Regis* v. *United States*, 665 F. Supp. 2d 370, 374 (S.D.N.Y. 2009) (McMahon, J.) (citing *Pinkerton* v. *United States*, 328 U.S. 640  (1946)). "Thus, under *Pinkerton*, a defendant may be found 'guilty on a substantive count without specific evidence that he committed the act charged if it is clear that the offense had been committed, that it had been committed in the furtherance of an unlawful conspiracy, and that the

26

defendant was a member of that conspiracy.'" *United States* v. *Bruno*, 383 F.3d 65, 89 (2d Cir. 2004) (quoting *United States* v. *Miley*, 513 F.2d 1191, 1208 (2d Cir. 1975)).

The S3 Indictment charges Medina in Count One with joining a drug conspiracy that had violent objects.  Accordingly, the Government seeks a *Pinkerton* instruction with respect to Counts Two and Four of the S3 Indictment.  The Government will demonstrate through its presentation of evidence at trial that a *Pinkerton* instruction is appropriate with respect to these counts because, under the circumstances in which these conspiracies were formed and developed, these crimes were foreseeable to Medina.

## CONCLUSION

For all of the foregoing reasons, the Government respectfully submits that the Court should grant the Government's motions *in limine*.

Dated: New York, New York
       June 6, 2014

Respectfully submitted,

PREET BHARARA
United States Attorney

By:        /s/

Jennifer E. Burns
Christopher J. DiMase
Assistant United States Attorneys
(212) 637-2315 / 2433

27

# EXHIBIT A